### D. Smith v. The State.

No. 611. Decided May 18, 1910.

Rehearing Denied October 10, 1910.

**Burglary—Sufficiency of the Evidence—Private Residence—Rape.**

Where, upon trial of a night-time burglary of a private residence, the evidence was sufficient to support the verdict of guilty, the same will not be disturbed. See opinion for facts held sufficient to sustain a conviction of burglarizing a private residence with intent to rape.

Appeal from the District Court of Rusk. Tried below before the Honorable W. C. Buford.

Appeal from a conviction of burglary of a private residence; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. W. McDavid,* and *F. B. Martin,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—The appellant in this case has appealed from a conviction for burglary, his punishment being assessed in the court below at confinement in the penitentiary for five years.

The indictment charges the burglarious entry to have been made in the night-time by breaking and entering the private residence then and there occupied and actually used at the time of the commission of the offense by Sol Protho and his family, with the intent to ravish and have carnal knowledge, without her consent, of one Cornelia Atkins, a woman, under the age of fifteen years.

There are no bills of exception in the record. The only ground of the motion for new trial is that the evidence is insufficient to support the verdict. On the trial of the case the State established that about the 1st of October, 1909, Lariso Protho, the wife of Sol Protho, gave an ice cream supper at her house in the country; that she invited several parties, one of whom was the appellant in this case. The witness, Lariso Protho, does not know what time the party broke up but anyway everybody had left and gone home; that appellant had also left and the family retired for the night and the witness Lariso Protho, states that she was aroused from her slumbers, having retired and was asleep, by her daughter Cornelia Atkins, calling her and saying that the appellant was in her room. The witness says she jumped up out of bed, ran out in the hall and as the defendant jumped off of the gallery she caught him and the dogs came up and attacked him and that while she had him seized, the defendant begged her to turn him loose and that he would tell all about it; that about that time her husband told her to turn defendant loose and the defendant stated to the witness that he would give her $10 not to prosecute him; that defendant asked for his shoes, he being at the time bare-foot and his shoes inside the house; that witness' husband went and got the shoes for the defendant and defendant left. She states she had closed the door and pushed a table against it and found when she awoke that the door was open. The defendant claimed that he had come into the witness' house in order to get her daughter to go out and meet a man by the name of "Fred" and when or about an hour after the defendant left he brought "Fred" back with him, or at least "Fred" appeared upon the scene about the time the defendant did, and denied that he had told the defendant to go and get the girl out for him. The witness further stated that the girl was about 14 or 15 years old. The defendant does not deny going into the house. He took the stand and testified that after he left the house that night—the night of the ice cream supper—he heard before he left this man "Fred" and the Atkins girl talking and he heard her promise to meet him out that night and that "Fred" requested him to go back and get her out and that he went to the house for that purpose, but denied that he went into the house but stated he went to the door and told her "Fred"

said for her to come out; that when he asked her to come out for "Fred" and she found out it was not "Fred" she began to scream and that her mother then got up and they got into a fuss about it. He denied that the girl's mother ever got hold of him or that the dogs seized him. The proof all shows that this was after midnight. We do not feel that we would be justified in holding, in the face of the verdict of the jury upon the evidence introduced upon the trial, that the evidence was insufficient to support the verdict. We are inclined to believe that the testimony is sufficient to support the verdict, if the testimony of the witnesses is to be believed and this was for the jury who were not only the judges of the sufficiency of the testimony but of the credibility of the witnesses, and they having found adversely to appellant's contention, we cannot disturb the verdict.

The judgment is in all things affirmed.

*Affirmed.*

[Rehearing denied October, 1910. Reporter.]